**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**HOWARDENA PINDELL**

                     Plaintiff,

     **v.**

**GEORGE RICHARD N'NAMDI, G. R.**
**N'NAMDI GALLERIES, INC., GEORGE**
**N'NAMDI GALLERIES INC., THE N'NAMDI**
**CENTER FOR CONTEMPORARY ART,**
**N'NAMDI LLC, G.R. N'NAMDI GALLERY**
**NEW YORK, LLC, JUMAANE N'NAMDI,**
**N'NAMDI CONTEMPORARY MIAMI LLC,**
**N'NAMDI CONTEMPORARY FINE ART, INC,**
**and ARTHUR PRIMAS**

                     Defendants.

No. 20 Civ. 818

**ECF Case**

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Howardena Pindell (hereinafter the "Plaintiff" or "Professor Pindell") by and through her attorney, Barbara T. Hoffman for her complaint against Defendants George Richard N'Namdi ("N'Namdi"); G.R. N'Namdi Galleries, Inc.; George N'Namdi Galleries, Inc.; The N'Namdi Center for Contemporary Art; N'Namdi LLC; G.R. N'Namdi Gallery New York, LLC; Jumaane N'Namdi ("J. N'Namdi"); N'Namdi Contemporary Miami LLC; N'Namdi Contemporary Fine Art, Inc.; (collectively N'Namdi, J. N'Namdi, and the Galleries are herein referred to as "the Galleries"); and Arthur Primas ("Primas"); (collectively all the individuals and the Galleries are referred to as the "Defendants"), hereby alleges, on personal knowledge as to herself, and on information and belief as to Defendants, as follows:

## NATURE OF THE ACTION

This is an action by Plaintiff, a visual artist, brought against the Defendants N'Namdi, J. N'Namdi, their Galleries, and Primas, alleging that the Defendants to whom she consigned works of art created by her for exhibition and sale, engaged in a pattern of racketeering activity in violation of the federal racketeering statute, and breached the common law and statutory fiduciary duties owed to Plaintiff. The N'Namdi enterprise is a maze of legal entities or dissolved legal entities controlled principally by George Richard N'Namdi and his son Jumaane N'Namdi. The finances of the various N'Namdi controlled companies and tax-exempt charity created by N'Namdi are intermingled, and the Plaintiff's works of art were invoiced to purchasers from the various entities as convenience served. Inventories of works of art and accounts of sales, if provided at all, were willfully misleading, inaccurate, omitted required information, and exhibited similar disregard of the corporate entities to further the scheme of egregious self-dealing and defrauding the Plaintiff.

Specifically, the complaint asserts *inter alia* claims under the Racketeer Influenced and Corrupt Organization Act ("RICO") 18 U.S.C. §§ 1962 (c) and state law claims for replevin, conversion, breach of fiduciary duties, and violation of the New York Arts and Cultural Affairs Law ("NYACAL") NYACAL § 12.01, the Illinois Consignment of Art Act 815 ILCS § 320 / 0.01 *et seq.* West 1996, Florida Statute Title XXXIX Commercial Relations § 686.502, and the Michigan Compiled Laws Chapter 442 - Sales Act 90 of 1970 Sales of Fine Art § 442.311-442.315. No distinction can be drawn for purposes of liability between the Defendants named herein, for such purposes, the gossamer corporate veil can be pierced.

The N'Namdis and their Galleries, beginning in the eighties, represented a roster of the leading African American artists of the last century, particularly those working in the style of

abstraction, like Howardena Pindell. Unfortunately, as is now acknowledged, and dramatically exhibited in the show at the Brooklyn Museum "Soul of a Nation," discrimination in the art world prevented the recognition that these artists deserved until the last several years. The N'Namdis and Primas took advantage of this situation to give these African American artists representation, and to build one of the finest private collections of African American art, unfortunately to the detriment of and at the expense of Plaintiff, and on information and belief other artists, egregiously breaching their fiduciary obligations to her and others.

## PARTIES

1.     Plaintiff Howardena Pindell is a world-renowned abstract painter and mixed-media artist, domiciled in New York, New York. The Plaintiff received an MFA from the Yale School of Art in 1967. The Plaintiff's first important exhibition was at Spelman College, Atlanta, in 1972, and she has exhibited in almost every following year for nearly 50 years, either as a solo artist, or in a group exhibition. The Plaintiff's work has been shown at the Metropolitan Museum of Art, the Museum of Contemporary Art, MOMA, the National Gallery of Art, the Museum of Fine Arts, the Pennsylvania Academy of the Fine Arts, the Smithsonian Museum of American Art, and the Whitney Museum of Art. A major retrospective exhibition of her career travelled to three major institutions, including the Museum of Contemporary Art Chicago.

2.     In addition to her career as an artist, The Plaintiff has taught at Stony Brook University (SUNY) in the Department of Art since 1979. This year, she was named a Distinguished Professor in the Department of Art at Stony Brook University. She has received the top awards in her field: a Guggenheim Fellowship (1987), the Most Distinguished Body of Work or Performance Award from the College Art Association (1990), the Distinguished Contribution to the Profession Award from the Women's Caucus for Art (1996), and two

National Endowment for the Arts Fellowships. Most recently, the Plaintiff received the College

Art Association award for lifetime achievement in 2018, the 2019 Artist Award from The

Artists' Legacy Foundation, the Archives of American Art Medal in 2019, and was named a

2020 United States Artists Fellow by United States Artists.

3.    Defendant George Richard N'Namdi ("N'Namdi") is an individual, a citizen of

the State of Michigan and domiciled in Detroit, Michigan who has or had ownership interest in

art galleries located in Detroit, Michigan, Chicago, Illinois, and New York, New York.

4.    Upon information and belief, N'Namdi is the sole shareholder of G.R. N'Namdi

Galleries, Inc., a duly authorized corporation organized under the laws of the State of Michigan,

and having its principal place of business in the City of Birmingham, County of Oakland, State

of Michigan, with a mailing address of 161 Townsend,  Birmingham, MI 48009.

5.    Upon information and belief, N'Namdi is or was the sole shareholder of George

N'Namdi Galleries, Inc., a duly authorized corporation organized under the laws of the State of

Michigan, and having its principal place of business in the City of Detroit, County of Wayne,

State of Michigan.

6.    Upon information and belief, N'Namdi is or was the President of, the registered

agent for, and one of three directors of, the N'Namdi Center for Contemporary Art, a domestic

nonprofit corporation incorporated in the State of Michigan in 2010.

7.    Upon information and belief, N'Namdi is the owner of the property at 52 E.

Forest, Detroit, MI 48201 on which the N'Namdi Center for Contemporary is located.

8.    Upon information and belief, N'Namdi is also the sole manager member of

Defendant N'Namdi LLC, a domestic limited liability company formed under the laws of the

State of New York, operating since 2019, and Defendant G.R. N'Namdi Gallery New York,

LLC, a domestic limited liability company formed under the laws of the State of New York, operating since 2005.

9.     Defendant Jumaane N'Namdi ("J. N'Namdi") is an individual, domiciled in Miami, Florida. Upon information and belief, J. N'Namdi, son of N'Namdi, managed and was the art advisor for the G.R. N'Namdi Gallery in Chicago, at 110 N. Peoria, Chicago, IL 60607. Upon information and belief, Jacqueline N'Namdi, the wife of J. N'Namdi, was also involved in managing the G.R. N'Namdi Gallery in Chicago. "Under his father's tutelage," J. N'Namdi quickly assumed the directorship of G.R. N'Namdi Gallery in Chicago and subsequently G.R. N'Namdi Gallery in New York, and N'Namdi Contemporary Fine Art, Inc. in Florida.

10.     N'Namdi Contemporary Fine Art, Inc. is a corporation in Miami, Florida and is doing business as N'Namdi Contemporary. Its website lists J. N'Namdi as Director of N'Namdi Contemporary in Miami and N'Namdi Contemporary Chicago, but no such corporation is listed with the Illinois Secretary of State.

11.     Upon information and belief, Defendant Arthur Primas is an individual, domiciled in Bedford, Texas, and the owner of the Arthur Primas Collection, a leading collection of African American art, which includes works of art by Plaintiff.

12.     Defendant G.R. N'Namdi Galleries, Inc. is a business entity formed under the laws of the State of Michigan. Upon information and belief, Defendant G. R. N'Namdi Galleries, Inc. is a "revoked" Michigan corporation, incorporated in 1996 and dissolved in 2008. Defendant G.R. N'Namdi Galleries Inc. registered as a foreign BCA on March 27, 1997 in Illinois, but its statute was revoked in August 1998. Notwithstanding, it continues to do business at all relevant times herein in Illinois, either as G.R. N'Namdi Galleries, Inc. or as N'Namdi Contemporary Fine Art, Inc.

13.     Defendant George N'Namdi Galleries Inc. is a domestic profit corporation formed under the laws of the State of Michigan. Upon information and belief, Defendant George N'Namdi Galleries, Inc. is a "revoked" Michigan corporation, incorporated in 1986 and dissolved on July 15, 2019.

14.     Defendant The N'Namdi Center for Contemporary Art is an active tax-exempt 501(c)(3) domestic nonprofit corporation incorporated in the State of Michigan in 2010.

15.     Defendant N'Namdi Contemporary Miami LLC is a Florida limited liability company, upon information and belief operating from 2012 until its dissolution in 2014.

16.     Defendant N'Namdi Contemporary Fine Art, Inc. is a Florida Profit Corporation formed under the laws of the State of Florida, operating since 2014, with Defendant J. N'Namdi as its registered agent, and a mailing address of 6505 NE 2nd Avenue, Miami, FL 33138.

17.     Upon information and belief, the Galleries were operated under the exclusive control of George N'Namdi with no respect for corporate formalities.

18.     Upon information and belief, dissolved N'Namdi business entities continued to operate with the dissolved entities' name, and a tax-exempt organization, N'Namdi Center for Contemporary Art, transacted business for the for-profit N'Namdi entities.

## JURISDICTION AND VENUE

19.     Jurisdiction over the claims arising under 18 U.S.C. § 1962 is proper in this Court pursuant to 18 U.S.C. § 1964(c) as well as supplemental jurisdiction under 28 U.S.C. § 1367 over the common law and state law claims.

20.     This Court also has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of costs and interests, and because the action has complete diversity between citizens of different states.

21.     Personal jurisdiction and venue over this action lies within this District pursuant to 18 U.S.C. § 1965(a) and (b) and 28 U.S.C. § 1391(b) because (i) all of the Defendants transact their affairs in the Southern District of New York and/or (ii) a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in the Southern District of New York, and have committed tortious acts without the state that injured the Plaintiff in New York. In accordance with 18 U.S.C. § 1965(b), the ends of justice require that all defendants be brought before this Court.

22.     This Court has personal jurisdiction over Defendants pursuant to New York CPLR § 301 and § 302(a).

### STATEMENT OF FACTS
### Capsule Chronology of the Plaintiff's Relationship with the Galleries

23.     Plaintiff entered into a consignment relationship with the Galleries in the late 1980s. Works of art created by Plaintiff consigned to the Galleries are collectively hereafter referred to as "Howardena Pindell Works of Art" or the "Pindell Enterprise Works."

24.     Plaintiff's first exhibition with the Galleries was at G. R. N'Namdi Gallery, Detroit, from September 25–November 7, 1987. Plaintiff also exhibited at this Gallery in 2003.

25.     Plaintiff first exhibited at the G.R. N'Namdi Gallery, Birmingham, Michigan, in 1992. Plaintiff also exhibited at this Gallery in 1995 and 2000.

26.     In 1993, Plaintiff consigned thirteen (13) works of art to the Galleries for a travelling exhibition "Howardena Pindell: A Retrospective Exhibition" ("the Retrospective"). On G.R. N'Namdi Gallery, Birmingham, MI stationary, the Galleries sent to Plaintiff on or about March 13, 1993, a list of only six (6) works consigned to the Retrospective ("Retrospective List"). Attached hereto as Exhibit A is the Retrospective List. Plaintiff handwrote on the

Retrospective List the names of the seven (7) additional works consigned by her to the Galleries for the Retrospective, which the Galleries had failed to include in Exhibit A.

27.     Plaintiff first exhibited works of art at N'Namdi's Chicago gallery the year it opened in 1996, doing business as G.R. N'Nnamdi, Inc., which was not a registered Illinois corporation at the time.

**"In My Lifetime" at N'Namdi's New York Gallery**

28.     The G.R. N'Namdi Gallery in New York at 526 W. 26th St #316, New York, NY 10001 from June 3 to August 31, 2006 held a major exhibition of over thirty years of Plaintiff's work, titled "In My Lifetime" ("In My Lifetime"). Twenty-three works by Plaintiff were consigned to In My Lifetime (the "In My Lifetime List"), a copy of which is hereto attached as Exhibit B.

29.     On July 14, 2008, because of the Galleries' delays in making timely payments of trust funds owing to Plaintiff in the amount of between $75,000 and $80,000 for sales made in 2006 and 2007, Plaintiff was forced to cash one of her retirement CDs in order to pay for her studio expenses and everyday living expenses.

30.     On May 7, 2009, Plaintiff's attorney requested by letter that N'Namdi return all of Plaintiff's works "on loan in New York for an exhibition," and the provision of "an inventory of the works currently at the Gallery."

31.     On August 13, 2009, Plaintiff's attorney wrote to N'Namdi by letter: "I am writing in regards to the agreement you made with Howardena Pindell at the end of last month. You agreed to give Ms. Pindell a complete inventory of the 15 pieces you will be returning to her at the end of the August, however she has received no such document. We expect this delivery inventory by early next week in order to provide Ms. Pindell adequate time to make insurance

and storage arrangements. Delivery of the artwork, the costs of which will be covered by you, can occur no earlier that August 31, 2009."

**The Chicago Inventory**

32.      In September 2009, J. N'Namdi provided to Plaintiff an inventory list of seventeen (17) works, all indicated to be in the Chicago inventory, attached hereto as Exhibit C ("the Chicago Inventory").

33.      On September 30, 2009, Plaintiff's attorney wrote to N'Namdi by letter: "We received a check for $6,000 owed to Howardena, along with the inventory list of her artwork. Unfortunately there is a large painting called *Shiva Ganges* that was not on the inventory list you provided. According to Ms. Pindell it was delivered to the New York Gallery after a traveling show. There were also two boxed pieces that were not on the list. One was a split photo piece about the canals in Venice and the other was a driver as seen from the back of a car in Ghana. All three were missing from the inventory list. Please provide us with the inventory information on these pieces."

34.      On October 13, 2009, Plaintiff's attorney wrote again to N'Namdi by letter, stating "we still haven't received more information from you regarding the painting called *Shiva Ganges* that was not on the inventory list you provided," and reiterating the request for information on the three (3) works missing from the Chicago Inventory.

35.      On November 2, 2009, certain works of art listed in the Chicago Inventory were delivered to Plaintiff ("November 2, 2009 Shipment").

36.      On November 3, 2009, Plaintiff's attorney wrote to J. N'Namdi by email at jennamdi@gmail.com: "We appreciate your return of Ms. Pindell's artwork, however we have been notified that 9 pieces, including 3 large paintings, 1 bark drawing, 1 video drawing and 4

split photo pieces in plexi boxes, were not returned. The following are the pieces consigned to you that were not returned in the November 2 shipment to Ms. Pindell (listed by number on your inventory list):

- Siva Ganges
- Toland (item #917)
- Who Do You Think You Are (item #925)
- Bark drawing (item #65)
- Video drawing (item #309)
- Boxed split photo pieces (items #917 and #2086)
- Venice and the Ghanaian driver as viewed from the back seat of a car.

   Please make arrangements to have these pieces returned to Ms. Pindell immediately."

   J. N'Namdi did not respond to this email, and the works of art remained missing.

   37.     On September 23, 2011, Plaintiff wrote to Jacqueline N'Namdi by email to jacqueline.grnnamdi@gmail.com: "I understand that Toland and Who do you think you are were sold by the gallery. For what price were they sold and to which collector. I was never consulted in terms of price."

   38.     On September 24, 2011, Jacqueline N'Namdi responded by email to Plaintiff from the G.R. N'Namdi Gallery in Chicago indicating that "*Who Do You Think You Are* sold for $30,000 to Arthur Primas, who has many of your works. *Toland* sold to James and Mary Bell for $45,000 and was featured in the Michigan Avenue Magazine on an article about their collection. I will send a copy to you in the mail."

   39.     James and Mary Bell were collectors domiciled in Chicago, Illinois at the time of their purchase of *Toland.*

40.     On September 25, 2011, Plaintiff responded to Jacqueline N'Namdi by email, asserting that "the prices seem on the low side since the painting the size of Who do [you think you are] was sold for $85,000. Could you discuss pricing with me during the process of making a sale."

41.     On October 13, 2011, Plaintiff's attorney wrote to Jacqueline N'Namdi and J. N'Namdi by email with enclosed letter to jacqueline.grnnamdi@gmail.com and jumaane.grnnamdi@gmail.com, *inter alia* requesting:

- "A full accounting of all works sold by the N'Namdi Gallery in the past five years with the sales price, the client and documented sales receipt and invoice.
- An inventory of all works in the N'Namdi Gallery's possession by Ms. Pindell and the current value that N'Namdi has placed on the works in its possession.
- Any works of art that the N'Namdi Gallery has loaned out for exhibition and / or sale on installment.
- An agreement to consult with Ms. Pindell prior to any change in the sales price based on a price list to be agreed upon between Ms. Pindell and the N'Namdi Gallery within the next month.
- An agreement that no discounts will be provided greater than 10% without Ms. Pindell's approval and all discounts to be split 50% to the gallery and 50% to Ms. Pindell.
- No sale shall be made on installment without the prior written approval of Ms. Pindell. Any approved sale on installment must provide that the proceeds from the sale will be split 60% to Ms. Pindell and 40% to the gallery.
- The proceeds from any sale whether on installment or for the entire purchase shall be remitted with best efforts, within two (2) weeks, but no later than one (1) month, to Ms. Pindell in her pro rata 60% share."

42.     On October 15, 2011, Jacqueline N'Namdi wrote to Plaintiff's attorney by email from jacqueline.grnnamdi@gmail.com, with a carbon copy to jumaane.grnnamdi@gmail.com and Plaintiff, indicating her receipt of the October 13, 2011 letter, and stating that "I am happy to prepare the documents Ms. Pindell has requested…I intend to follow up with you by November 15, 2011 with the items you've requested." No follow-up email from Jacqueline N'Namdi in response to her October 15, 2011 email was ever received.

11

43.     On May 29, 2013, J. N'Namdi wrote to Plaintiff's attorney by email from jumaane.grnnamdi@gmail.com: "please share this with Howardena she was wondering if the piece 'toll land' was on her statement," the email attached hereto as Exhibit D, with a file attachment "Howardena Pindell artist statement.pdf," attached hereto as Exhibit E ("Galleries' 2013 Accounting Statement"). The Galleries' 2013 Accounting Statement indicates that *Who Do You Think You Are?* was sold on September 30, 2009. This, notwithstanding that Plaintiff had demanded its return via emails sent prior to September 30, 2009. Plaintiff was not informed of the sale.

44.     On or before mid-2014, Plaintiff was informed by other artists who had consigned work to the Galleries that they were likewise struggling with delayed or withheld payments, particularly elderly artists and deceased artists represented by their estates: The Estate of Al Loving and the Estate of Herbert Gentry, by way of example and not limitation.

### Sales of Works by Plaintiff to Ko Smith

45.     On or about April, 2014, Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237 inquired with the Galleries as to the availability of Howardena Pindell Works of Art, and was offered the opportunity via mail and email to purchase such Works.

46.     On April 29, 2014, Ko Smith purchased *Untitled, 1978,* for $90,000 from the G.R. N'Namdi Gallery at 52 E. Forest, Detroit, MI 48201. The invoice for this sale is attached hereto as Exhibit F. The sale of this Work was not reported to Plaintiff by the Galleries.

47.     On April 29, 2014, Ko Smith purchased *Untitled #79,* 1975-1, for $35,000 from the G.R. N'Namdi Gallery at 52 E. Forest, Detroit, MI 48201. The invoice for this sale is attached hereto as Exhibit G. The sale of this Work was not reported to Plaintiff by the Galleries.

48.     On December 17, 2014, Ko Smith purchased *Separate But Equal Genocide: AIDS,* 1991-2 for $225,000 from the G.R. N'Namdi Gallery at 52 E. Forest, Detroit, MI 48201. The invoice for this sale is attached hereto as Exhibit H.  The sale of this Work was not reported to Plaintiff by the Galleries.

49.     On May 22, 2015, Ko Smith purchased *Autobiography: India (Shiva, Ganges)*, 1985 for $165,000 from the G. R. N'Namdi Gallery at 52 E. Forest Detroit MI 48201.The invoice for this sale is attached hereto as Exhibit I. The sale of this Work was not reported to Plaintiff by the Galleries. Plaintiff had requested the return of this Work multiple times vis-à-vis her attorney in 2009, requests disregarded by the Galleries.

50.     On July 31, 2015, Ko Smith purchased *Who Do You Think You Are? One of Us!* 1991-1992 for $250,000 from the "George N'Namdi Galleries" with an address at 52 East Forest, Detroit, MI 48201. The invoice for this sale is attached hereto as Exhibit J. The sale of this Work was not reported to Plaintiff by the Galleries.

51.     In 2015, in order to find out what Howardena Pindell Works of Art, if any, remained in the Galleries' possession or control despite her attorney's letter of 2011, Plaintiff had friends call as potential purchasers and inquire with the Galleries about her work. The Galleries did not provide an inventory list to Plaintiff or her friends in response to inquiries with respect to the Howardena Pindell Works of Art in their possession or control.

52.     On March 1, 2016, Ko Smith was issued an invoice for *Africa Red Frog* 1986 (incorrectly titled on the invoice as "Africa Red Frog 1996") for $185,000 on the stationary of the N'Namdi Center for Contemporary Art, by information and belief issued by an employee of the N'Namdi Center for Contemporary Art, with the indication that the invoice was from "G.R. N'Namdi Gallery." The invoice is attached hereto as Exhibit K.

### Skoto Gallery New York Exhibition

53.     From May 30 - August 3, 2019, Skoto Gallery in New York held an exhibition

titled "Group Show," which included three works of art by Plaintiff, upon information and belief

on from the N'Namdi Galleries: *Autobiography: Nigeria (Oba's Palace, Lagos, 1973), 1989;*

*Autobiography: Himalayas (Ganesh/Lakshmi), 1985;* and *Autobiography: Italy (Rome,*

*Coliseum, 1975), 1992–1995.* Screenshots of the works on the Skoto Gallery website are

attached hereto as Exhibit L.

54.     On October 2, 2019, Plaintiff's attorney wrote to N'Namdi and J. N'Namdi at

nncontemporary@gmail.com and nnamdicenter@gmail.com by email with enclosed letter "to

demand the return of any works of art by Howardena Pindell in the possession or control of the

Gallery." Further attached to the email *inter alia* was a list of the works demanded to be

returned, attached hereto as Exhibit M ("First Demand List").

55.     On October 9, 2019, in response to Plaintiff's attorney's October 2 email, J.

N'Namdi at jumaane.nncontemporary@gmail.com wrote: "this an email I sent you 6 years ago.

check and see if any of the pieces you are concerned about are on here," and forwarded his email

of May 29, 2013, with the Galleries' 2013 Accounting Statement attached.

56.     The Galleries' 2013 Accounting Statement is falsely denominated as a "Quarterly

Statement" from the Galleries. It lists the fifteen (15) works sold with selling prices and

payments made between April 17, 2004 and December 6, 2011 to Plaintiff in a separate column;

payments which do not correspond either to the selling prices, or to any other agreed-upon time,

method, or amount for payment.

57.     Five (5) of the ten (10) works on the First Demand List are listed as sold on the

Galleries' 2013 Accounting Statement. The five (5) works are *M64, Astronomy Series M51 –*

*Whirlpool Galaxy, (Maroon) Arcturus/ Leo Minor/ Jupiter, (Blue) Hydra/Centaurau/Jupiter* and *(White) Perseus Hyra/ Jupiter/ M27.*

58.     Upon information and belief, Plaintiff was never paid in full for the sales. Further, notwithstanding that the Galleries' 2013 Accounting Statement lists the five (5) works as sold before 2011, on May 29, 2015, an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com indicated that all five (5) works of art were available. Ms. Swaby, upon information and belief, was then an employee of N'Namdi Contemporary Fine Art, Inc.

59.     Ms. Swaby's email listed the selling prices of each of the five (5) works as $25,000. The Galleries' 2013 Accounting Statement listed the selling prices of each of the five (5) works as $4,000 or $5,000.

60.     J. N'Namdi's re-sending of the Galleries' 2013 Accounting Statement to Plaintiff's attorney on October 9, 2019 is a reaffirmation of the Galleries' 2013 Accounting Statement as accurate; upon information and belief, the Galleries' 2013 Accounting Statement is a fraudulent misrepresentation of the Galleries' inventory of Howardena Pindell Works of Art, the trust monies owed to Plaintiff, and omits other information required to be provided to Plaintiff under applicable law.

61.     On November 13, 2019, after comprehensive review of Plaintiff's detailed and well-organized files and records, Plaintiff's attorney wrote to N'Namdi and J. N'Namdi via email letter to nncontemporary@gmail.com and nnamdicenter@gmail.com, and demanded the return of additional works of art. The revised and expanded list ("Revised Demand List") of twenty (20) works whose return was demanded is attached hereto as Exhibit N.

62.     On November 13, 2019, J. N'Namdi responded to Plaintiff's attorney via email, writing: "Now you are being unreasonable. And when you are unreasonable its hard to work with you. Review Pindells previous statements and see what she has been paid for and then get back to me. Based on the info you sent me i cant even responded to that because its baseless and wrong and you and she knows it."

63.     On November 14, 2019, Plaintiff's attorney responded to J. N'Namdi via email *inter alia:* "Far from being unreasonable, the evidence indicates that your payments, if any, to Ms. Pindell were sporadic, and that you acted and continued to act in a manner of total disregard of your obligations as a fiduciary to Ms. Pindell. The deadline I have set is fixed. Should you wish to send me contrary evidence to support your claims, I am happy to convey it to my client for consideration. The burden of proof, given your fiduciary obligations to Ms. Pindell, imposed by law, require that you come forward with evidence to show that you have met your statutory imposed obligations, and not the other way around."

64.     On November 27, 2019, Peter M. Ellis of Reed Smith LLP as attorney for N'Namdi, J. N'Namdi, and the Galleries wrote to Plaintiff's attorney via email letter from PEllis@ReedSmith.com, indicating that he was reviewing the materials Plaintiff's attorney provided, and "will prepare a written response to your correspondence in due course."

65.     On December 16, 2019, Plaintiff's attorney wrote to Mr. Ellis by email, indicating that she considered his lack of response, "no response," and stated: "I reiterate the demands made in my letter to you of November 13, 2019, including but not limited to that the N'Namdi galleries cease and desist from any and all sales of Howardena Pindell's works of art, and any advertising for sale of Howardena Pindell works, including by way of reproducing and

displaying any works of Howardena Pindell on various N'Namdi and N'Namdi-controlled websites."

66.     On January 22, 2020, Plaintiff's attorney wrote to Primas by letter, requesting the return of the Howardena Pindell Works of Art by information and belief in Primas' possession or control on or before January 27, 2020. The list of works whose return was demanded is attached hereto as Exhibit O ("Primas Demand List").

67.     As of the date of the filing of this complaint, no response has been received from Primas or Mr. Ellis.

68.     This game-playing is characteristic of prior behavior of the Galleries and their lawyers. See Declaration of John Cahill, Dkt. No. 15, in Case No. 05 CV 7966 (JGK) (MHD) *Loving v. N'Namdi*.

## Converted Works of Art

69.     Plaintiff owns all right, title, and interest in the Howardena Pindell Works of Art set forth below.

### *Autobiography: Nigeria (Oba's Palace, Lagos, 1973)***, 1989 ("***Autobiography: Nigeria***").**

70.     *Autobiography: Nigeria* was first consigned to N'Namdi in February 1991, and is listed as work of art #11 in Appendix A of letter from Howardena Pindell to George N'Namdi listing the consigned works. It is also included on N'Namdi's list of works available at G.R. N'Namdi Gallery at 161 Townsend, Birmingham, MI 48009 dated March 13, 1993. It was exhibited at Skoto Gallery in New York in the summer of 2019.

### *Autobiography: Himalayas* **(***Ganesh/Lakshmi***), 1985 ("***Autobiography: Himalayas***")**

71.     *Autobiography: Himalayas* is included in a list of works available at G.R. N'Namdi Gallery at 161 Townsend, Birmingham, MI 48009 dated March 13, 1993. An email

17

from Michaela Mosher (mmosher.nnamdicenter@gmail.com) in Michigan to Ko Smith on May 12, 2015 indicated its availability and pricing at $45,000. An email from Melanie Swaby (melanie.nncontemporary@gmail.com) in Florida to Lisa Interdonato on May 29, 2015 indicated its availability and pricing at $75,000. It was exhibited at Skoto Gallery in New York in the summer of 2019, and is currently advertised on N'Namdi Contemporary website as of January 2020 (http://nnamdicontemporary.com/artists/howardena-pindell/). Screenshots of the Howardena Pindell Works of Art currently listed as available on the N'Namdi Contemporary website are hereto attached as Exhibit P.

### Autobiography: Italy (*Rome, Coliseum, 1975*), 1992–1995 ("*Rome*")

72.     *Rome* appears on a consignment agreement dated March 6, 1994. It also appears on Plaintiff's handwritten list dated to 2000 of works consigned to the Galleries, faxed to Shelly, by information and belief an employee of the Galleries, at 248-642-5630. It was exhibited at Skoto Gallery in New York in the summer of 2019.

### Untitled, 1978 ("*Untitled 1978*")

73.     *Untitled 1978* appears on a list of works available at G.R. N'Namdi Gallery at 161 Townsend, Birmingham, MI 48009 dated March 13, 1993. It was purchased by Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237 on April 29, 2014 for $90,000. No sale of this work of art was ever reported to Plaintiff.

### Untitled #79, 1975-1 ("*Untitled 1975*")

74.     *Untitled* 1975 is listed on a March 11, 2006 G.R. N'Namdi Gallery Detroit inventory report, and was purchased by Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237 on April 29, 2014 for $35,000.

### *Separate But Equal Genocide: AIDS*, 1991–1992 ("Separate But Equal Genocide")

75.     *Separate But Equal Genocide* was included on a G.R. N'Namdi Gallery Chicago inventory report dated March 11, 2006, listed as work of art #19-20. It was also included in "In My Lifetime." The Galleries' 2013 Accounting Statement listed *Separate But Equal Genocide* as sold for $50,000 on April 30, 2008, with a payment to Plaintiff of $5,000. No information on the purchaser or the details of the sale were provided to Howardena Pindell.

76.     Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237on December 17, 2014 purchased *Separate But Equal Genoice* for $225,000 from the G.R. N'Namdi Gallery at 52 E. Forest, Detroit, MI 48201 through Michaela Mosher. Ms. Mosher, on information and belief, is an employee of the N'Namdi Center for Contemporary Arts, as indicated by her email transmission to Mr. Smith and the invoiced prepared by her and sent via email to Mr. Smith from the email address mmosher.nnamdicenter@gmail.com.

### *Autobiography: India (Shiva, Ganges)*, 1985 ("*Shiva Ganges*")

77.     *Shiva Ganges* was consigned by Plaintiff to N'Namdi at the New York Gallery, received by then-employee of the Galleries Alaina Simone. Notwithstanding, it never appeared on any inventory report prepared by N'Namdi and submitted to the Plaintiff. Plaintiff continually noted its absence from inventory reports by noting it in writing on the inventory reports provided by the Galleries.

78.     Plaintiff faxed to Robin, an employee of the Galleries, at fax no. 804-817-3777 a copy of an inventory report provided by the Galleries with the note "Robin – I am requesting the ones with *. Let me know if there are others. Howardena." On this report Plaintiff marked *Shiva Ganges* as missing, with the note "Shiva Ganges? Where" on the third page; "Shiva Ganges" written in on the fourth page; and "Shiva Ganges" written in on the seventh page.

79.     On November 3, 2009, Plaintiff's attorney wrote to the Galleries requesting the immediate return of nine works consigned to the N'Namdi Galleries which were not returned in the November 2, 2009 Shipment, including *Shiva Ganges*.

80.     The Galleries never responded to this request, and *Shiva Ganges* was not returned to the Plaintiff. *Shiva Ganges* was sold to Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237 on May 22, 2015 for $165,000, a sale unreported to Plaintiff.

### *Who Do You Think You Are? One of Us!* **1991-1992 (*"Who Do You Think You Are?"*)**

81.     *Who Do You Think You Are?* was included on the Chicago Inventory among works of art that the Galleries represented would be returned to Plaintiff in the November 2, 2009 Shipment. It was not returned. According to the Galleries' 2013 Accounting Statement, it was listed as sold for a heavily discounted price of $30,000 on September 25, 2009, notwithstanding the demand by the Plaintiff for the return of all works in May 2009 and again in August 2009 (see paragraphs 30 and 31 *supra*). By email on September 24, 2011, Jacqueline N'Namdi reported that "*Who Do You Think You Are* sold to for $30,000 to Arthur Primas, who has many of your works." *Who Do You Think You Are?* was purchased by Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237 on July 31, 2015 for $250,000, a sale unreported to Plaintiff.

### *Africa Red Frog,* **1986 (*"Africa Red Frog"*)**

82.     *Africa Red Frog* was on N'Namdi's list of works available at G.R. N'Namdi Gallery at 161 Townsend, Birmingham, MI 48009 dated March 13, 1993, and included on the March 11, 2006 G. R. N'Namdi Gallery New York inventory report (work of art #7). It was invoiced to Ko Smith of 101 Wyckoff Avenue #3C, Brooklyn, NY 11237 but not purchased on March 1, 2016 for $185,000 (incorrectly labeled as "*Africa Red Frog* 1996"). In email

correspondence between Ko Smith and Michaela Mosher (mmosher.nnamdicenter@gmail.com) on Friday, April 18, 2014, Ms. Mosher indicated the availability of *Africa Red Frog*. By information and belief, Ms. Mosher is an employee of Defendant N'Namdi Center for Contemporary Art, a Michigan State nonprofit organization. The invoice was issued to Ko Smith on the stationary of the N'Namdi Center for Contemporary Art, a Michigan State nonprofit organization, with Michaela Mosher's Center-affiliated email mmosher.nnamdicenter@gmail.com listed, as well as the indication that the invoice was from "G. R. N'Namdi Gallery."

***Autobiography: Egypt (Cairo and Thebes),* 1989 ("*Autobiography: Egypt (Cairo and Thebes)*")**

83.     *Autobiography: Egypt (Cairo and Thebes)* was first consigned to N'Namdi in February 1991, listed as work of art #5 in Appendix A of letter from Howardena Pindell to George N'Namdi. It was also included on the list of works lent to the travelling show "Howardena Pindell: A Retrospective Exhibition." An email from Michaela Mosher ((mmosher.nnamdicenter@gmail.com) to Ko Smith on May 12, 2015 indicated its availability and pricing at $40,000, while an email from Melanie Swaby (melanie.nncontemporary@gmail.com) to Lisa Interdonato on May 29, 2015 indicated its availability and pricing at $65,000. As of January 2020, it was listed as available on the N'Namdi Contemporary website (http://nnamdicontemporary.com/artists/howardena-pindell/). Screenshots of the Howardena Pindell Works of Art currently listed as available on the N'Namdi Contemporary website are hereto attached as Exhibit P.

***Autobiography: Italy (Dolomites, 1991)*, 1997–2000 ("*Dolomites*")**

84.     *Dolomites* first appeared on the March 11, 2006 G.R. N'Namdi Gallery Chicago inventory report (work #26). An email from Michaela Mosher

(mmosher.nnamdicenter@gmail.com) to Ko Smith on May 12, 2015 indicated its availability

and pricing at $35,000 (incorrectly referred to as "Hary Dolomites"), while an email from

Melanie Swaby (melanie.nncontemporary@gmail.com) to Lisa Interdonato on May 29, 2015

indicated its availability and pricing at $70,000 (again incorrectly referred to as "Hary

Dolomites"). As of January 2020, it was listed as available on the N'Namdi Contemporary

website (http://nnamdicontemporary.com/artists/howardena-pindell/). Screenshots of the

Howardena Pindell Works of Art currently listed as available on the N'Namdi Contemporary

website are hereto attached as Exhibit P.

### *Untitled,* **also known as** *India Temple,* **year unknown ("***India Temple***")**

85.     *India Temple* is presently advertised on the N'Namdi Contemporary website

(http://nnamdicontemporary.com/artists/howardena-pindell/). Screenshots of the Howardena

Pindell Works of Art currently listed as available on the N'Namdi Contemporary website are

hereto attached as Exhibit P.

### *Autobiography: Japan (Temples/Seasons, 1981–1994)***, 1996 ("***Autobiography: Japan***")**

86.     *Autobiography: Japan* is listed as priced for $10,000 on undated list provided by

the Galleries with ID #14-05 001688 on stationary which lists N'Namdi's address as in

Birmingham, MI. Listed as item #2086 on an inventory list provided to Howardena by the

Galleries, which she faxed back to Robin at the Galleries at the fax no. 404-817-3777, marking

the work as "missing." As of January 2020, it was listed as available on the N'Namdi

Contemporary website (http://nnamdicontemporary.com/artists/howardena-pindell/). Screenshots

of the Howardena Pindell Works of Art currently listed as available on the N'Namdi

Contemporary website are hereto attached as Exhibit P.

***Autobiography: New York (Mandela Welcome Parade #3, 1992)*, 1999–2000 ("*Mandela #3*")**

87.     *Mandela #3* appears on Howardena Pindell's handwritten list dated to 2000 of works consigned to the N'Namdi galleries, faxed to Shelly at 248-642-5630. Howardena Pindell wrote on the G.R. N'Namdi Gallery Chicago March 11, 2006 inventory report that this piece was missing from their inventory. It was listed as sold for $14,000 according to the Galleries' 2013 Accounting Statement. However, as of 2020, the *Mandela #3* was shown as available on the N'Namdi Contemporary website (http://nnamdicontemporary.com/artists/howardena-pindell/). Screenshots of the Howardena Pindell Works of Art currently listed as available on the N'Namdi Contemporary website are hereto attached as Exhibit P.

**M64/ Venus/ Mars/ Tide Raising Force, 1999 ("M64")**

88.     *M64* was listed as sold for $5,000 on the Galleries' 2013 Accounting Statement. However, *M64* was listed as available for sale for $25,000 on May 29, 2015 in an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

***Astronomy Series M51 – Whirlpool Galaxy (Northern Hemisphere)*, 2001-2 ("*M51*")**

89.     *M51* was listed as sold for $5,000 on the Galleries' 2013 Accounting Statement. However, *M51* was listed as available for sale for $25,000 on May 29, 2015 in an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

***(Maroon) Arcturus/ Leo Minor/ Jupiter*, 2003 ("*Maroon*")**

90.     *Maroon* was consigned to the Galleries for In My Lifetime, and is included on the In My Lifetime List. *Maroon* was listed as sold for $4,000 on the Galleries' 2013 Accounting Statement. However, *Maroon* was listed as available for sale for $25,000 on May 29, 2015 in an

23

email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

### *(Blue) Hydra/ Centaurau/ Jupiter/ Northern Hemisphere,* **2003 (*"Blue"*)**

91.     *Blue* was consigned to the Galleries for In My Lifetime, and is included on the In My Lifetime List. *Blue* was listed as sold for $4,000 on the Galleries' 2013 Accounting Statement. However, *Blue* was listed as available for sale for $25,000 on May 29, 2015 in an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

### *(White) Perseus Hyra/ Jupiter/ M27,* **2003 ("White")**

92.     *White* was consigned to the Galleries for In My Lifetime, and is included on the In My Lifetime List. *White* was listed as sold for $4,000 on the Galleries' 2013 Accounting Statement. However, *White* was listed as available for sale for $25,000 on May 29, 2015 in an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

### *Cactus, Arizona,* **1972 (*"Cactus, Arizona"*)**

93.     *Cactus, Arizona* was consigned to the Galleries for In My Lifetime, and is included on the In My Lifetime List. It was listed as available for sale for $70,000 on May 29, 2015 in an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

### *Autobiography: East/West (Music Making Angel),* **1986 (*"East/West"*)**

94.     *East/West* was listed as available for sale for $75,000 on May 29, 2015 in an email from Melanie Swaby at melanie.nncontemporary@gmail.com to Lisa Interdonato at linterdonato@yahoo.com.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
<u>Racketeer Influenced and Corrupt Organization Act ("RICO") 18 U.S.C. § 1962 (c) –</u>
<u>Against All Defendants</u>

95.     Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein**.**

96.     The activities of the defendants constitute an enterprise engaged in and whose activities effect interstate and foreign commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

97.     Each of the defendants is a "person" within the meaning of 18 U.S.C. § 1961(3), and is separate from the enterprise.

98.     "Racketeering activity" is defined in 18 U.S.C. § 1961 (1) to include a variety of offenses including, as relevant here, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and violations of the National Stolen Property Act under 18 U.S.C. § 2314 and 2315.

99.     The Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Specifically: operating through a maze of business entities, some revoked, N'Namdi, J. N'Namdi and his wife, and Primas participated in a scheme using the Galleries to obtain Pindell Enterprise Works which were sold at highly discounted prices to unidentified buyers, with the trust proceeds from such sales being used to finance the Galleries and other N'Namdi activities solely for their own personal benefit. The Defendants used the mail and wire to provide false and misleading invoices and inventories to Plaintiff, and to offer converted Pindell Enterprise Works to collectors.

100.     Pursuant to and in furtherance of their fraudulent scheme, the Defendants committed a pattern of multiple related acts of racketeering activity during a period of more than ten years, more fully described below.

101.     The activity consisted of a series of acts with a common purpose: the exhibition and sale of the Pindell Enterprise Works at heavily discounted prices and untimely payments of trust funds, providing interest-free loans and inflated profits to the Defendants, that lasted over a period of a decade or more, and that posed (and may still pose) a continued threat of criminal activity.

102.     The Galleries breached their fiduciary relationship to Plaintiff by *inter alia* commingling trust property and trust funds to the detriment of Plaintiff's career as an artist.

103.     The Defendants and others committed numerous predicate acts of racketeering activity in connection with the enterprise within the meaning of 18 U.S.C. § 1961(1). Such activity includes, but is not necessarily limited to, numerous and repeated violations of U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), and 18 U.S.C. § 2314 and 2315 ("National Stolen Property Act").

## 18 U.S.C. § 2314-2315 ("National Stolen Property Act")

104.     Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein.

105.     Section 2314 provides in relevant part that "(1) the defendant transported property, as defined by the statute, in interstate commerce, (2) the property was worth $5,000 or more, and (3) the defendant knew the property was 'stolen, converted or taken by fraud'."

106.     Section 2315 provides in relevant part that "Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or

money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken…shall be fined under this title or imprisoned not more than ten years, or both."

107.    The Galleries knowingly transported converted Pindell Enterprise Works between Michigan, Illinois, New York, and Florida in violation of 18 U.S.C. §2314-2315. Upon information and belief, at least five (5) converted Pindell Enterprise Works are currently in Miami, Florida at N'Namdi Contemporary Fine Art, Inc. and certain works were previously offered for sale at the Skoto Exhibition in 2019 in New York, then transported to Florida by J. N'Namdi.

108.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in her business and property in that she has lost the ability to set prices for the Howardena Pindell Works of Art, lost control of the Howardena Pindell Works of Art, has been deprived of access to trust property and trust proceeds, has been forced to lose investment income by Defendants' activities, and has been deprived of information such as collectors of the Pindell Works of Art, information which is vital to further exhibitions and development of her career as an artist. Plaintiff has also been the victim of severe emotional distress.

**18 U.S.C. § 1341 and 1343 ("Mail and Wire Fraud")**

109.    Section 1341 outlaws the use of a facility of the United States Postal Service or "any commercial or private interstate carrier" in connection with a fraudulent scheme or artifice.

110.    Section 1343 outlaws the use of "wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

111.    The Defendants shipped certain Pindell Enterprise Works in the November 2, 2009 Shipment to Plaintiff via common carrier, and paid and received funds via wire or mail. By way of example of the latter, on July 10, 2008, Plaintiff's attorney wrote to the Galleries in New York, Michigan and Illinois by facsimile, requesting that the Galleries pay Plaintiff the $81,150 due and owing to her. On July 23, 2008, Plaintiff's attorney wrote to the Galleries in New York, Michigan and Illinois again by facsimile, acknowledging receipt by mail of a check for $20,000 from the Galleries for Plaintiff, and reiterating demand for the remaining $61,150 due and owing to her by August 1, 2008.

112.    Members of the enterprise engaged in multiple emails and telephone calls with Plaintiff and her attorney which were misrepresentations. By way of example, see paragraphs 40, 41, 53-58, 62 *supra.* Such misrepresentations as set forth were made by N'Namdi, J. N'Namdi, Jacqueline N'Namdi, and Mr. Ellis, as participants in the enterprise of the Gallery to deliberately defraud Plaintiff.

113.    Each of these patterns was repeated each time a Pindell Enterprise Work was exhibited and/or sold.

114.    Moreover, the Defendants communicated among themselves by mail and wire.

## AS AND FOR A SECOND CAUSE OF ACTION
### Replevin – Against the Galleries

115.    Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein**.**

28

116.    Plaintiff is the owner of the works of art set forth in the Revised Demand List, attached hereto as Exhibit N, and entitled to recover sole and immediate possession of works of art.

117.    Plaintiff has repeatedly demanded the return of the works of art set forth in the Revised Demand List from the Galleries in October and November 2019. The Galleries have failed and refused to deliver the works of art to Plaintiff.

118.    Plaintiff has no adequate remedy at law.

119.    By virtue of the foregoing, Plaintiff is entitled to the immediate return of the works of art set forth in the Revised Demand List.

## AS AND FOR A THIRD CAUSE OF ACTION
### Conversion – Against the Galleries

120.    Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein.

121.    Plaintiff is the owner of the works of art set forth in the Revised Demand List, and entitled to recover sole and immediate possession of the works of art.

122.    Plaintiff has demanded the return of the works of art set forth in the Revised Demand List. The Galleries have failed and refused to deliver the works of art set forth in the Revised Demand List to Plaintiff.

123.    The Galleries converted and appropriated the works of art set forth in the Revised Demand List in complete disregard and derogation of the Plaintiff's right, title, and interest to the works of art.

124.    As a direct and proximate result of the aforesaid wrongful actions, Plaintiff has suffered damages in an amount based on the current fair market value of the Howardena Pindell Works of Art set forth in the Revised Demand List, to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Violation of the New York Arts and Cultural Affairs Law ("NYACAL") NYACAL §**
**12.01, the Illinois Consignment of Art Act 815 ILCS § 320 / 0.01 *et seq.* West 1996, Florida**
**Statute Title XXXIX Commercial Relations § 686.502, and the Michigan Compiled Laws**
**Chapter 442 - Sales Act 90 of 1970 Sales of Fine Art § 442.311 - 442.315 (collectively**
**hereafter referred to as "Artist Consignment Laws")**

125.    Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set

forth fully and completely herein**.**

126.    All of the Artist Consignment Laws provide in substance and effect that whenever

an artist consigns works of art to a gallery, the gallery acts as an agent for the artist; the works

are trust property, and the proceeds from their sales are trust funds.

127.    The Illinois Consignment of Art Act 815 ILCS § 320 ("Illinois Consignment of

Art Act") provides in relevant part: "Sec. 2.1 Whenever an artist delivers or causes to be

delivered a work of fine art of the artist's own creation to an art dealer in this State for the

purpose of sale, exhibition, or both, on a commission, the delivery to and acceptance of the work

of fine art by the art dealer is deemed to place the work of fine art on consignment…"

128.    "Sec 2.2 Such art dealer shall thereafter, with respect to the work of fine art, be

deemed the agent of the artist."

129.    "Sec 2.3 Such work of fine art is trust property and the art dealer is trustee for the

benefit of the artist until the work of fine art is sold to a bona fide purchaser or returned to the

artist."

130.    "Sec 2.4 The proceeds of the sale of a work of fine art are trust property and the

art dealer is trustee for the benefit of the artist until the amount due the artist from the sale is paid

in full. Except for customer deposits, these trust funds shall be paid to the artist within 30 days of

receipt by the art dealer unless the parties expressly agree otherwise in writing."

131.   "Sec. 5.1 An art dealer may accept a work of fine art for commission on consignment from an artist only if prior to or within seven days of acceptance the art dealer enters into a written contract with the artist which shall include but not be limited to the following provisions:

>    (a)  The value of the work of fine art.
>
>    (b)  The time within which the proceeds of the sale are to be paid to the artist if the work of fine art is sold.
>
>    (c)  The commission the art dealer is to receive if the work of fine art is sold.
>
>    (d)  The minimum price for the sale of the work of fine art, and any discounts ordinarily given by the art dealer in his regular course of business."

132.   "Sec. 5.3 If an art dealer violates this Section 5, the artist may seek relief in a court of competent jurisdiction by having the obligation of the artist voided with respect to that art dealer or to his successors or assigns."

133.   The Galleries have violated the Illinois Consignment of Art Act specifically by not providing a written contract, which meets Sec.5; and by failing to provide payment to the artist within thirty (30) days of receipt of sale proceeds.

134.   For violation of the Illinois Consignment of Art Act, the Galleries are liable to Plaintiff for Plaintiff's actual damages, in an amount currently calculated to be no less than $174,650 for the voided total commissions taken by the Galleries from the sales of Howardena Pindell Works of Art (see Exhibit Q attached hereto for the calculation of the damages owed), and reasonable attorneys' fees.

31

## AS AND FOR A FIFTH CAUSE OF ACTION
## <u>Breach of Fiduciary Duty – Against the Galleries</u>

135.    Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein**.**

136.    N'Namdi, J. N'Namdi, and the Galleries owed and owe a fiduciary duty to Plaintiff and are jointly and severally liable for damages resulting from the breach of such duties.

137.    As an agent of the artist, Plaintiff, the Galleries have a fiduciary duty to act in the utmost good faith and in the interest of the artist, its principal, throughout the relationship.

138.    The Howardena Pindell Works of Art were trust property in the possession of the Galleries under common law and the relevant and applicable state statutes in New York, Illinois, Michigan, and Florida.

139.    The Galleries were trustees of the Howardena Pindell Works of Art, and owed to Plaintiff the fiduciary duties of undivided and undiluted loyalty and care, to account to Plaintiff for the benefits and profits derived from the sale of the Howardena Pindell Works of Art, and to provide accurate information and accounting to Plaintiff regarding the Howardena Pindell Works of Art.

140.    Defendant Galleries breached their fiduciary duties to Plaintiff *inter alia* by:

(a) Failing to account to Plaintiff as required by law, including by way of example for sales made, the collectors of the works, and the sales prices;

(b) Failing to timely pay Plaintiff, or pay Plaintiff at all, for amounts due and owing;

(c) Failing to provide undivided loyalty to Plaintiff;

(d) Misappropriating trust proceeds to their own account;

32

(e)  Failing to return Howardena Pindell Works of Art or follow the instructions of Plaintiff;

(f)  Acting in their own self-interest rather than to benefit Plaintiff, including the commingling of trust funds;

(g)  Converting Howardena Pindell Works of Art to their own benefit and account;

(h)  More specifically, the Galleries breached their fiduciary duties owed to Plaintiff by the sale of trust property to Ko Smith and following, the failure to remit trust funds to Plaintiff for the sales in the amount of $765,000 (see Exhibit R attached hereto for the calculation of the damages owed);

(i)  Violating RICO as set forth in the Second Cause of Action; and

(j)  By refusing or otherwise failing to provide Plaintiff with accurate information and an accurate and timely accounting regarding the sale of Howardena Pindell Works of Art, rather than the false and/or misleading, infrequent accounts provided by the Galleries to Plaintiff.

141.   As a result of the Galleries' breaches of their fiduciary duties to Plaintiff, she has suffered and will continue to suffer damages in an amount to be determined at trial, costs (including reasonable attorneys' fees) and disbursements. In addition, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
### Replevin – Against Arthur Primas

142.   Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein.

143.    Plaintiff is the owner of several of the Pindell Enterprise Works, and entitled to recover sole and immediate possession of the works of art set forth in the Primas Demand List (Exhibit O).

144.    Upon information and belief, Primas acquired the works of art, but is not a "good faith purchaser."

145.    Plaintiff demanded the return of the works of art set forth in the Primas Demand List from Primas in January 2020.

146.    Primas has not responded to the request to return the works of art on the Primas Demand List.

147.    Plaintiff has no adequate remedy at law.

148.    By virtue of the foregoing, Plaintiff is entitled to the immediate return of the Howardena Pindell Works of Art.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**Unjust Enrichment – Against All Defendants**

149.    Plaintiff repeats, realleges, and incorporates paragraphs 1 through 94 as if set forth fully and completely herein.

150.    N'Namdi, J. N'Namdi, and the Galleries have been unjustly enriched by retaining the works of art by Plaintiff as set forth in the Revised Demand List (Exhibit N), and the trust proceeds derived from the sale of those works.

151.    Upon information and belief, the Galleries agreed with Primas that on any sale of Howardena Pindell Works of Art by Primas, the Works would be consigned to the Galleries, and the sales price split 50/50 between Primas and the Galleries.

152.    Arthur Primas, as part of the enterprise set forth herein, received or purchased works of art by Plaintiff at discounted rates far below the fair market value from the Galleries.

153.    Primas has been unjustly enriched by retaining the works of art and sales proceeds of those works set forth on the Primas Demand List (Exhibit O).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor and against Defendants as follows:

154.    As and for the First Claim for Relief ("Civil RICO"), awarding Plaintiff treble damages under 18 U.S.C. §§ 1962 (c) and (d) against the Defendants N'Namdi, J. N'Namdi, and Primas;

155.    As and for the Second Claim for Relief (replevin against Galleries), an order that the Galleries return all the Howardena Pindell Works of Art as set forth in the Revised Demand List (Exhibit N) to Plaintiff, to be returned at the sole cost and expense of the Galleries;

156.    As and for the Third Claim for Relief (conversion), awarding damages in an amount to be determined at trial,

157.    As and for the Fourth Claim for Relief (violation of the Artist Consignment Laws), (i) the Court voiding the commissions taken by the Galleries from the sales of Howardena Pindell Works of Art pursuant to Section 5 of the Illinois Consignment of Art Act, and awarding against the Galleries jointly and severally $174,650 to compensate the Plaintiff for the voided commissions; (ii) awarding actual damages against the Galleries for breach of the Artist Consignment Laws in an amount to be determined at trial;

158.    As and for the Fifth Claim of Relief (breach of fiduciary duties), an order against N'Namdi and J. N'Namdi for compensatory damages in the amount of $765,000 to Plaintiff for failure to remit the trust payments received from the sales of trust property by the Defendants to Ko Smith;

159.    As and for the Sixth Claim of Relief (replevin against Primas), an order that Primas return the Howardena Pindell Works of Art in the Primas Collection as set forth in the Primas Demand List (Exhibit O) to Plaintiff;

160.    As and for the Seventh Claim of Relief (unjust enrichment), (i) awarding compensatory damages in an amount to be determined at trial; (ii) ordering that Defendants disgorge unlawful profits and award compensatory damages in an amount to be determined at trial; and (iii) such other or further relief as the Court deems just and proper, including awarding reasonable attorneys' fees, costs and disbursements to the extent permitted by law.

January 30, 2020                                Respectfully submitted,

By: _Barbara Hoffman_

Barbara Hoffman, Esq. (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200

Attorney for Plaintiff Howardena Pindell

36